# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DBW PARTNERS, LLC | : | |
| d/b/a THE CAPITAL FORUM, | : | |
|   1200 New Hampshire Avenue, N.W. | : | |
|   Washington, D.C. 20036 | : | Civil Action No. 18-3127 |
| | : | |
|         Plaintiff, | : | |
| | : | |
|       v. | : | |
| | : | |
| UNITED STATES POSTAL SERVICE | : | |
|   475 L'Enfant Plaza SW | : | |
|   Washington, D.C. 20260 | : | |
| | : | |
|       and | : | |
| | : | |
| UNITED STATES POSTAL SERVICE | : | |
| OFFICE OF INSPECTOR GENERAL | : | |
|   1735 N. Lynn Street | : | |
|   Arlington, VA 22209 | : | |
| | : | |
|         Defendants. | : | |

## COMPLAINT FOR INJUNCTIVE RELIEF

1.      This is an action brought under the Freedom of Information Act ("FOIA"), 5

U.S.C. § 552, by DBW Partners, LLC, doing business as The Capitol Forum ("Capitol Forum").

In this action, Capitol Forum seeks to compel the release of records improperly withheld by the

defendants, the United States Postal Service ("USPS") and the Office of Inspector General of the

United States Postal Service ("OIG").  Capitol Forum's demands for these records, made in two

separate FOIA requests, relate to USPS's controversial "Postage Reseller Program," and its

equally controversial relationship with a private company, Stamps.com, which has received

significant financial benefits due to the Postage Reseller Program.

2.      For the past several years, USPS's Postage Reseller Program has been publicly criticized in view of the substantial—and arguably unjustified—discounts provided to postage resellers, and the benefits that subsequently accrue to postage providers such as Stamps.com.  A number of critics in the industry and government have called for modifications to this program, which would likely have a detrimental effect upon the publicly traded value of Stamps.com.

3.      In the summer of 2017, Stamps.com arranged for an interview to be held with a high-ranking USPS official, James Cochrane, who at the time was its Executive Vice President and Chief Customer and Marketing Officer ("CCMO").  It is not known whether USPS approved this interview.  Initially, this interview was scheduled for August 2, 2017.  But at the request of Stamps.com, the interview was rescheduled to July 31, 2017—two days before Stamps.com's scheduled earnings call with industry analysts.  During the interview, Mr. Cochrane blessed the Postage Reseller Program and specifically called out Stamps.com as one of the "excellent partners on bringing the best solution to customers."  It is not known whether Mr. Cochrane's remarks were authorized.

4.      On August 1, 2017, Stamps.com published the Cochrane interview on its website, and the following day, August 2, 2017, Stamps.com held its quarterly earnings call.  During this call, Stamps.com highlighted the Cochrane interview and noted his positive comments about the reseller program.  The next day, August 3, 2017, the share price of Stamps.com rose by forty (40) percent.

5.      Subsequently, the Office of Government Ethics of the USPS opened an inquiry into the circumstances of the Cochrane interview and the Office of Inspector General of the USPS began to prepare a report on the reseller program.  Mr. Cochrane was notified of these developments.  His employment with the USPS subsequently ended in February, 2018.  The OIG

report was released to Congress on July 17, 2018.  On July 23, 2018, the cover page of the OIG

report was released publicly, which suggested that the report contained criticisms of the reseller

program.  In addition, certain details about the report appeared in the press, also indicating

criticisms of the program.  Since July 23, 2018, the share price of Stamps.com has declined

approximately fifty (50) percent.

6.      Capitol Forum has requested any and all documents relating to the Office of

Government Ethics inquiry.  It has also requested the OIG report.  Both requests were denied,

and both appeals of those denials were rejected.  This lawsuit challenges those denials and

rejections.

## PARTIES

7.      Plaintiff DBW Partners, LLC is a District of Columbia limited liability company,

doing business as The Capitol Forum.  Capitol Forum maintains its principal place of business at

1200 New Hampshire Avenue, N.W., Washington, D.C. 20036.  Capitol Forum is a subscription

news service providing comprehensive coverage of competition policy and in-depth market and

political analysis of specific transactions and investigations.

8.      Defendant USPS is an "agency" within the meaning of 5 U.S.C § 552(f)(1) and

has possession of some of the documents that Plaintiff seeks.  USPS is headquartered at 475

L'Enfant Plaza, SW, Washington, D.C. 20260.

9.      Defendant USPS OIG is an "agency" within the meaning of 5 U.S.C § 552(f)(1)

and has possession of some of the documents that Plaintiff seeks.  The OIG is headquartered at

1735 N. Lynn Street, Arlington, VA 22209.

## JURISDICTION AND VENUE

10.     This Court has both subject matter jurisdiction over this action and personal

jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B).  This Court also has jurisdiction

over this action pursuant to 28 U.S.C. § 1331.  Venue lies in this district under 5 U.S.C. §

552(a)(4)(B).

## STATEMENT OF FACTS

### Background

11.     James Cochrane is the former CCMO and Executive Vice President of USPS.  In

that role, he had supervisory authority over the Postage Reseller Program.  Mr. Cochrane was a

high-ranking government official.  His salary was among the highest in the entire United States

government.

12.     In July, 2017, Mr. Cochrane agreed to an interview with a representative of

Stamps.com.  The purpose of the interview was, *inter alia*, to defend the reseller program, which

at the time was the subject of considerable controversy.  Through this program, the USPS would

negotiate service agreements with individual resellers.  These companies would receive

significant discounts that would otherwise be unavailable to them.  Stamps.com would then enter

into commercial arrangements with one or more of these resellers and would derive the benefits

of their discounts, despite the fact that it would not otherwise qualify for these discounts.

13.     The interview was initially scheduled for August 2, 2017, but Mr. Cochrane

agreed to Stamps.com's request to move the interview to July 31, 2017.  During the interview,

Mr. Cochrane made a number of positive comments about the reseller program, as well as about

Stamps.com.  Specifically, Mr. Cochrane stated: "we thought resellers were an excellent

opportunity to bring our brands and our shipping solutions down-market to smaller volume

shippers[;]" "resellers have been a very effective addition to the Postal Service portfolio[;]" and

"we looked at resellers and things like PC Postage providers, like Stamps.com . . . as excellent partners on bringing the best solution to customers."

14.     On August 1, 2017, the interview with Mr. Cochrane was published on the Stamps.com blog.  On August 2, 2017, Stamps.com conducted its quarterly earnings call. During that call, Stamps.com made several references to Mr. Cochrane's positive comments about the reseller program.

15.     On August 3, 2017, the share price of Stamps.com rose forty (40) percent.  Upon information and belief, the interview of Mr. Cochrane was advanced to allow Stamps.com executives to refer to the positive comments on its website and in its earnings call.  Upon information and belief, Mr. Cochrane was aware the interview was rescheduled for these reasons.

16.     Within a week of the Cochrane interview, the USPS Office of Government Ethics began an inquiry into the circumstances surrounding the interview.  The results of the ethics inquiry are not known.

17.     The USPS Office of Inspector General then commenced a review of the reseller program itself.  The OIG report was provided to Congress but has not been made public. However, the cover page of that report was publicly released on July 23, 2018, and certain details regarding the specifics of the report have been disclosed in the press.  These disclosures suggest that the OIG found serious flaws with the program, including the fact that companies like Stamps.com have benefitted from the program to the detriment of both the USPS and the American taxpayer.  Since July 23, 2018, the share price of Stamps.com has fallen by fifty (50) percent.

**Capitol Forum's Request for Documents Relating to the Ethics Records**

18.     On October 23, 2018, Capitol Forum requested access to "[a]ny documents or communications related to an ethics investigation and/or ethics review of former Chief Customer and Marketing Officer James Cochrane" for the time period July 1, 2017 through October 23, 2018.  USPS confirmed receipt of Plaintiff's October 23, 2018, FOIA Request on October 31, 2018, and assigned it FOIA Case No. 2019-FPRO-00102.

19.     By letter dated November 6, 2018, Plaintiff was denied access to the requested information on the grounds that it was exempt from disclosure under Exemption 6 of the FOIA, 5 U.S.C. § 552(b)(6).   Under Exemption 6, USPS may withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  On November 19, 2018, Plaintiff appealed the denial of this request.  The appeal was assigned No. 2019-APP-00026.  By letter dated December 19, 2018, Plaintiff's appeal was rejected on the ground that the requested information was exempt from disclosure under Exemption 6.  The rejection is attached as Exhibit A.  Plaintiff has exhausted all administrative remedies.

20.     While Exemption 6 permits an agency to withhold personnel files that would invade the privacy interests of certain individuals, those privacy interests must be balanced against the public's interest in obtaining the information.  The case law interpreting this exemption makes clear that if there is widespread public interest in the requested material, it should be disclosed.  The cases also inquire into the significance of the employment status of the individual whose records are requested, and hold that the personnel files of high-ranking government officials are entitled to substantially less protection than the files of low-ranking government employees.

21.     In denying Plaintiff's appeal, the USPS relied upon two judicial decisions (neither from this district) that had denied disclosure because of the low-ranking nature of the government employees involved, and the fact that the requested information would be of interest "only to the requesting party." Those cases are inapposite here. Mr. Cochrane was a high-ranking government official of the USPS, and, in fact, one of the highest paid officials in the entire United States government. Courts in this district have routinely ordered the disclosure of personnel files of high-ranking government officials. *See Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice,* 840 F. Supp. 2d 226, 236 (D.D.C. 2012) (holding that although congressman had substantial but much diminished privacy interest in the DOJ's withholding of documents relating to investigations of alleged bribery and other illegal conduct, this interest was outweighed by the public interest); *Chang v. Dep't of Navy*, 314 F. Supp. 2d 35, 44 (D.D.C. 2004) (holding that the public interest in information regarding disciplinary actions taken against commander outweighed any privacy interests commander had in his personnel records); *Sullivan v. Veterans Admin.*, 617 F. Supp. 258, 260-61 (D.D.C. 1985) (holding that a report investigating allegations that a former director of a Veterans Administration medical center misused government property and misappropriated public funds was not exempt under the FOIA. Moreover, the requested information in this case carries widespread public interest: the disclosure of the Cochrane interview caused the Stamps.com share price to skyrocket, and the subsequent decline following the OIG report led to significant losses for investors who relied on the Cochrane interview. There is also a significant public interest in the maintenance of good and ethical government practices and the concomitant avoidance of regulatory capture.

22.     Plaintiff has a right of access to the requested information under 5 U.S.C. § 552(a)(3), and there is no legal basis for defendant USPS's denial of such access.

**Capitol Forum's Request for the OIG Report**

23.     On July 25, 2018, Capitol Forum requested access to the USPS OIG report

RARC-WP-18-010, Postal Partnerships: The Complex Role of Middlemen and Discounts in the

USPS Package Business.  Plaintiff's FOIA request was assigned Case No. 2018-IGFP-00538.

24.     By letter dated August 10, 2018, Plaintiff was denied access to the requested

information on the grounds that it was exempt from disclosure under Exemption 3 of the FOIA,

5 U.S.C. § 552(b)(3).   Under Exemption 3, the OIG may withhold records that are exempted

from disclosure by another statute that "establishes particular criteria for withholding or refers to

particular types of matters to be withheld."  The OIG referred to the Postal Reorganization Act,

which specifically exempts from disclosure "information of a commercial nature, including trade

secrets, . . . which under good business practice would not be publicly disclosed."  39 U.S.C. §

410 (c)(2).

25.     On August 10, 2018, Plaintiff appealed the denial of this request. The appeal was

assigned No. 2018-IGAP-00010.  By letter dated September 10, 2018, Plaintiff's appeal was

rejected on the grounds that the requested information was exempt from disclosure under

Exemption 3, and is attached as Exhibit B.  Plaintiff has exhausted all administrative remedies.

26.     In denying Plaintiff's appeal, the OIG stated that the withheld report should not be

produced because "it would publicize critical USPS competitive product pricing strategies" that

would disadvantage the USPS in the marketplace.  The OIG also stated that it could not

segregate non-exempt portions of the report because they are "inextricably intertwined" with the

exempt portions withheld under Exemption 3.

27.     The OIG's assertion that the release of the report would publicize competitive

pricing is inaccurate.  USPS's pricing determinations are already public: they are embedded in

every PC postage barcode printed on a USPS label.  According to a white paper published in

November 2017 by Micronite, a shipping technology company, USPS has declined to encrypt

the information on its barcodes, leaving its pricing "visible to anyone who chooses to decode the

PC Postage barcode," which includes USPS competitors.  *See* Exhibit C at p. 3.  OIG does not

dispute this fact; rather, its denial of Plaintiff's appeal states that USPS's failure to encrypt "does

not evidence an intent to publicize the information because barcodes cannot be read by the

general public."  Exhibit B at p. 2.  This position makes no sense.  Simply because a layman

cannot discern the prices reflected on barcodes does not mean that this information remains a

trade secret.  Virtually by definition, if one's competitors can read and understand the

information, as here, it is not a trade secret.  USPS made the voluntary decision to make its

pricing information public.  It cannot now claim that this information remains entitled to trade

secret protection.

28.     OIG also argues that it is permitted to withhold the entire report, including any

and all information that is *not* entitled to trade secret protection.  According to OIG, any and all

information contained in the report that should otherwise be released cannot be "reasonably

segregated" from the information that is protected.  Under FOIA, an agency is required to release

any portion of a document that is not protected by an exemption as long as that portion is

reasonably segregable from the exempted portion: "[a]ny reasonably segregable portion of a

record shall be provided to any person requesting such record after deletion of the portions which

are exempt." 5 U.S.C. § 552(b).  Conversely, if the report contains otherwise releasable material

that is not "reasonably segregable" from the exempt material, the entire document may be

withheld.  However, when the agency takes this position with a requester, it is required to

provide the requester with a "detailed justification" to support its position that all reasonably

segregable information has been released.  A conclusory and blanket assertion that all of the facts described in the report are "intertwined," as the OIG has done here, does not constitute a sufficient explanation of non-segregability.

29.     Plaintiff has a right of access to the requested information under 5 U.S.C. § 552(a)(3), and there is no legal basis for defendant OIG's denial of such access.

## FIRST CAUSE OF ACTION

### Violation of FOIA for Wrongfully Withholding the Ethics Records

30.     Each of the preceding paragraphs 1 through 29 is hereby incorporated herein by reference.

31.     USPS has wrongfully withheld agency records requested by Plaintiff and described as "[a]ny documents or communications related to an ethics investigation and/or ethics review of former Chief Customer and Marketing Officer James Cochrane" for the time period July 1, 2017 through October 23, 2018.  The USPS's position is unreasonable and unsupported by pertinent authority, sufficient to support an award of attorneys' fees.

32.     Plaintiff has exhausted all applicable administrative remedies with respect to this FOIA request to the USPS.

33.     Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested documents.

## SECOND CAUSE OF ACTION

### Violation of FOIA for Wrongfully Withholding the OIG Report

34.     Each of the preceding paragraphs 1 through 33 is hereby incorporated herein by reference.

35.    OIG has wrongfully withheld agency records requested by Plaintiff, and described as the USPS OIG report RARC-WP-18-010, Postal Partnerships: The Complex Role of Middlemen and Discounts in the USPS Package Business.  The OIG's position is unreasonable and unsupported by pertinent authority, sufficient to support an award of attorneys' fees.

36.    Plaintiff has exhausted all applicable administrative remedies with respect to this FOIA request to the OIG.

37.    Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested documents.

38.    In the alternative, Plaintiff is entitled to injunctive relief to remedy the OIG's failure to provide an adequate basis for its position that the non-exempt portions of the document cannot be reasonably segregated from the exempt portions.  The OIG should be required to provide a "*Vaughn* Index" and to otherwise justify its refusal to release any portion of the document, as required by FOIA.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this Court:

1.    Order Defendant USPS to immediately disclose all records requested relating to the ethics inquiry of James Cochrane;

2.    Order Defendant USPS OIG to immediately disclose OIG report RARC-WP-18-010;

3.    Order Defendants to produce a *Vaughn* index to the extent they claim a FOIA exemption or privilege applies to any document or part thereof;

4.    Expedite this proceeding as provided for in 28 U.S.C. § 1657;

5.    Award plaintiff costs and reasonable attorneys' fees in this action, as provided in

5 U.S.C. § 552(a)(4)(E); and

6.    Grant such other and further relief as the Court may deem just and proper.

DATED: December 28, 2018                    Respectfully submitted,


WILLIAMS LOPATTO, PLLC


JOHN B. WILLIAMS (D.C. Bar No. 257667)
FARA N. KITTON (D.C. BAR No. 1007793)
1200 New Hampshire Avenue, N.W.
Suite 750
Washington D.C. 20036
Tel: (202) 296-1611
jbwilliams@williamslopatto.com

*Counsel for Plaintiff*