**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DBW PARTNERS, LLC                             :
    d/b/a THE CAPITOL FORUM         :
                                                        :
    Plaintiff,                               :         Civil Action No.:       18-3127 (RC)
                                                        :
    v.                                       :         Re Document Nos.:    19, 20
                                                        :
UNITED STATES POSTAL SERVICE and         :
UNITED STATES POSTAL SERVICE             :
OFFICE OF INSPECTOR GENERAL              :
                                                        :
    Defendant.                               :

**MEMORANDUM OPINION**

**GRANTING IN PART AND DENYING IN PART THE PARTIES'**
**RENEWED CROSS-MOTIONS FOR SUMMARY JUDGMENT**

This case concerns Freedom of Information Act ("FOIA") requests by DBW Partners,

LLC, which does business as "the Capitol Forum."  The requests were directed at the United

States Postal Service ("USPS") and the USPS Office of Inspector General ("OIG") (collectively

"the Government" or "the Postal Service").  Last year, both parties moved for summary

judgment.  *See* Defs.' Mot. for Summ. J. ("MSJ"), ECF No. 11; Pl.'s Cross-Mot. for Summ. J.

("Cross-MSJ"), ECF No. 12.  On October 28, 2019, the Court issued an Order Denying

Defendant's Motion for Summary Judgment and Granting in Part and Denying in Part Plaintiff's

Motion for Summary Judgment ("MSJ Order"), ECF No. 17, along with an accompanying

Memorandum Opinion, *DBW Partners, LLC v. United States Postal Service*, No. 18-3127, 2019

WL 5549623 (D.D.C. Oct. 28, 2019), ECF No. 18.  The Court ordered that USPS search for and

produce documents responsive to one request and that USPS OIG produce for *in camera* review

an unredacted copy of a report at issue in the other request.  *See* MSJ Order 2.  USPS OIG was

also ordered to file updated justifications for withholding any portions of the report. *Id.* After USPS and USPS OIG made their productions and filings, the Capitol Forum responded. *See* Pl.'s Resp. Pursuant to this Court's Oct. 28, 2019 Order ("Pl.'s Resp."), ECF No. 20. The Capitol Forum challenges the revised withholdings and production, and asks the Court "to order the release of the [report] in unredacted form, or, in the alternative to release those portions of the [report] that do not contain confidential information." *Id.* at 3. The Court construes the Defendants' updated production and justifications as amounting to a renewal of its Motion for Summary Judgment, ECF No. 11, and likewise construes Capitol Forum's Response as a partial renewal of its own Cross-Motion for Summary Judgment, ECF No. 12. The Court therefore evaluates USPS OIG's filings and production for compliance with FOIA and ultimately concludes that the agency's updated justifications are generally sufficient to carry its burden under FOIA. However, the Court also finds, based on its *in camera* review, that USPS OIG failed to segregate certain non-exempt reasonably segregable portions of its production, and will order their production. Accordingly, each party is entitled to partial summary judgment.

## I. BACKGROUND

The Capitol Forum is a self-described "subscription news service providing comprehensive coverage of competition policy and in-depth market and political analysis of specific transactions and investigations." Compl. ¶ 7, ECF No. 7. Two FOIA requests that it submitted in 2018 form the basis for this litigation. Both relate generally to the USPS's Postage Reseller Program and Negotiated Service Agreements ("NSAs")—which allow companies to resell USPS services at discount prices—and to the USPS's relationship with Stamps.com, a private company whose business model relied on participating in the Postage Reseller Program. *See id.* ¶¶ 1–2.

The first request only warrants a brief discussion here as it is no longer the subject of any dispute. It was submitted to USPS on October 23, 2018 and sought "[a]ny documents or communications related to an ethics investigation and/or ethics review of former [USPS] Chief Customer and Marketing Officer James Cochrane" between July 1, 2017 and October 23, 2018. Williams Decl., Ex. A, ECF No. 12-3 at 7–9. USPS responded with a *Glomar* response. *Id.*, Ex. B., ECF No. 12-3 at 11–13. The Court held that USPS "did not meet is burden and [did] not establish[]" that a *Glomar* response was justified. *DBW Partners*, 2019 WL 5549623 at *7. The Court therefore granted summary judgment to the Capitol Forum on this issue and Ordered USPS to search for responsive documents, produce them, and explain any withholdings. *See* MSJ Order. USPS later represented that it had diligently searched for responsive records and found none. *See* Defs.' Notice of Filing of Updated Justifications ("Defs.' Update") at 2, ECF No. 19. The Court had afforded the Capitol Forum the opportunity to respond to the Government's production or response regarding the ethics records, *see* MSJ Order at 2, but the Capitol Forum only addressed its other FOIA request in its response, *see* Pl.'s Resp. The Court therefore does not understand the Capitol Forum to be further challenging USPS's response regarding the ethics records, or the adequacy of the search therefor, and does not need to address that request further.

The Capitol Forum's other FOIA request, sent on July 25, 2018, sought a copy of a USPS OIG report, titled "Postal Partnerships: The Complex Role of Middlemen and Discounts in the USPS Package Business" (the "OIG Whitepaper" or the "Whitepaper"). Williams Decl., Ex. U, ECF No. 12-3 at 257–58. According to reporting by the Capitol Forum, the Whitepaper criticized the USPS's lack of oversight of its contracts with its partners and estimated that reseller programs and NSAs were costing the USPS over $1 billion annually. *Id.*, Ex. R (October

2018 Capitol Forum Article), ECF No. 12-3 at 247.  The agency withheld the Whitepaper, citing

Exemption 3 to FOIA, which allows an agency to withhold records "exempted from disclosure

by statute [if that statute] 'establishes particular criteria for withholding or refers to particular

types of matters to be withheld.'"  *Id.*, Ex. V, ECF No. 12-3 at 260 n.1, (quoting 5 U.S.C.

§ 552(b)(3)); *see also id.* at 260–61.  The agency pointed to a provision of the Postal

Reorganization Act establishing that the USPS was not obligated to disclose "information of a

commercial nature, including trade secrets, whether or not obtained from a person outside the

Postal Service, which under good business practice would not be publicly disclosed."  *Id.* at 260

n.1 (quoting 39 U.S.C. § 410(c)(2)).  The Capitol Forum appealed the denial of this FOIA

request as well, and the appeal was denied on September 10, 2018.  *See* Compl., Ex. B, ECF No.

1-2.

DBW Partners brought this FOIA suit against the USPS and the USPS OIG on December

28, 2018.  *See* Compl.  After this suit was filed but before moving for summary judgment, USPS

produced to the Capitol Forum a heavily redacted version of the Whitepaper.  Nickoski Decl.,

Ex. H at 41–82, ECF No. 11-3.  Both parties then moved for summary judgment.  *See* MSJ;

Cross-MSJ.  Defendants filed two declarations supporting their motion.  *See* Nicoski Decl., ECF

No. 11-3; Martin Decl., ECF No. 11-4.

The Court rejected the Capitol Forum's initial argument that the Whitepaper had to be

disclosed.  *DBW Partners*, 2019 WL 5549623 at *7.  It was clear that the Postal Reorganization

Act exempted at least some of its contents from disclosure.  *Id.*  The Court agreed, however, that

the USPS OIG had not adequately justified the heavily redacted document that was produced to

the Plaintiff.  *Id.* at *8–9; *see id.* at *8 (describing the redactions).  "Considering that the

existence of USPS Reseller Programs and NSAs are already public knowledge," the Court

concluded, "it [was] implausible that the OIG Whitepaper [did] not contain at least somewhat more segregable non-exempt information than what the USPS OIG ha[d] already revealed." *Id.* at *9. The declarations produced by the Government established that at least some of the redacted material was exempt from disclosure, but they failed to explain how so much could be. *Id.* In addition, the Court noted that the redactions were internally inconsistent. *Id.* at *10. The Court ordered *in camera* review of an unredacted version of the document, along with "updated justifications" from USPS OIG. *Id.*

USPS OIG's updated justifications were filed on November 27, 2019, and came in the form of a declaration filed by Sharon Owens, USPS Vice President for Pricing and Costing. *See* Owens Decl., ECF No. 19-1. USPS OIG explained that Owens's declaration would "explain[] in detail why the redacted portions of the document constitute 'information of a commercial nature . . . which under good business practice would not be publicly disclosed'" pursuant to the Postal Reorganization Act and FOIA Exemption 3. Defs.' Update at 1. A new redacted version of the Whitepaper, "reflecting the correction of inadvertent errors and the release of additional non-exempt, segregable material," *id.*, was also produced based on USPS's determination "that additional segregable, non-exempt information [could] be released," Owens Decl. ¶ 23. The Court will review the substance of the declaration below. As for the new version of the Whitepaper, USPS has identified and disclosed "somewhat more segregable non-exempt information." *See DBW Partners*, 2019 WL 5549623 at *9. There are now only twenty pages redacted in their entirety (down from thirty). *See* Owens Decl., Ex. 1 ("Whitepaper"), ECF No. 19-1 at 25–66;[1] *DBW Partners*, 2019 WL 5549623 at *8. The agency has also resolved the

---

[1] Unless otherwise noted, citations to the Whitepaper throughout the remainder of this opinion refer to this most recent version attached to the Owens Declaration. Because the

internal inconsistencies the Court noted in its prior opinion. *See DBW Partners*, 2019 WL 5549623 at *10. In general, though, the document remains quite heavily redacted, with only section headings revealed on many pages. *See* Whitepaper.

The Capitol Forum filed a response on December 18, 2019, objecting that the new version of the Whitepaper "remains almost entirely redacted" and that "[t]he new Owens declaration fails woefully to comply with this Court's directive." Pl.'s Resp. at 2. The Capitol Forum states that "it does not explain how it is remotely plausible that virtually no information can be segregated and released; it fails to describe in any sufficient detail its review for segregable information; and it fails to explain that it had produced all information that would not risk disclosing non-exempt information." *Id.* The Capitol Forum says it "is unable at this time to offer a concrete and specific response" because the Whitepaper is so redacted and the declaration so opaque. *Id.* at 3. Nonetheless it "urge[s] the Court to order the release of the Whitepaper in unredacted form, or, in the alternative to release those portions of the Whitepaper that do not contain confidential information." *Id.*

The Court construes the updated justifications filed by USPS and the request by the Capitol Forum to amount to a renewal of the parties motions for summary judgment, as multiple rounds of summary judgment review are not uncommon in FOIA cases. *E.g., Gatore v. DHS*, 327 F. Supp. 3d 76, 89 (D.D.C. 2018) ("two rounds of summary judgment briefing"); *Borda v. U.S. Dep't of Justice, Criminal Division*, 306 F. Supp. 3d 306, 314 (D.D.C. 2018) ("three rounds of briefing on summary judgment"); *see also Electronic Privacy Info. Ctr. v. Customs and Border Protection*, 248 F. Supp. 3d 12, 15 n.1 (D.D.C. 2017) (construing a filing in a FOIA case

---

Whitepaper contains multiple inconsistent sets of page numbers, the Court refers to the page numbers generated by the Court's electronic filing system for citation purposes.

as a renewed motion for summary judgment although it was not identified as such); *Charles v. Office of the Armed Forces Medical Examiner*, 979 F. Supp. 2d 35, 37 (D.D.C. 2013) (same). The Court therefore will review the new version of the Whitepaper and the new declaration under the typical standard employed in FOIA litigation for cross-motions for summary judgment.

## II.  LEGAL STANDARD

The Court will apply the same legal standard as it typically would when considering a motion for summary judgment in FOIA litigation.  FOIA mandates release of properly requested federal agency records, unless the materials fall squarely within one of nine statutory exemptions.  *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011); *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (citing 5 U.S.C. § 552(a)(3)(A), (b)). Additionally, FOIA "requires that even if some materials from the requested record are exempt from disclosure, any 'reasonably segregable' information from those documents must be disclosed after redaction of the exempt information unless the exempt portions are 'inextricably intertwined with exempt portions.'"  *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (citing 5 U.S.C. § 552(b); *Mead Data Ctr., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)).  Exemptions must be "narrowly construed," and "conclusory and generalized allegations of exemptions are unacceptable." *Prop. of the People, Inc. v. Office of Mgmt. & Budget*, 330 F. Supp. 3d 373, 380 (D.D.C. 2018) (quoting *Morley v. CIA*, 508 F.3d 1108, 1114–15 (D.C. Cir. 2007).

An agency is entitled to summary judgment if no material facts are genuinely in dispute and if the agency demonstrates "that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information." *Competitive Enter. Inst. v.*

*EPA*, 232 F. Supp. 3d 172, 181 (D.D.C. 2017). "This burden does not shift even when the requester files a cross-motion for summary judgment because 'the Government ultimately has the onus of proving that the documents are exempt from disclosure,' while the 'burden upon the requester is merely to establish the absence of material factual issues before a summary disposition of the case could permissibly occur.'" *Hardy v. ATF*, 243 F. Supp. 3d 155, 162 (D.D.C. 2017) (brackets omitted) (quoting *Pub. Citizen Health Research Grp. v. FDA*, 185 F.3d 898, 904–05 (D.C. Cir. 1999)).

To carry its burden, the agency must provide "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of the withheld document to which they apply." *Elec. Privacy Info. Ctr. v. DEA*, 192 F. Supp. 3d 92, 103 (D.D.C. 2016) (quoting *Mead Data Ctr.*, 566 F.2d at 251). The agency "cannot justify its withholdings on the basis of summary statements that merely reiterate legal standards or offer 'far-ranging category definitions for information,'" *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 955 F. Supp. 2d 4, 13 (D.D.C. 2013) (quoting *King v. U.S. Dep't of Justice*, 830 F.2d 210, 221 (D.C. Cir. 1987)), but it "may rely on declarations that are reasonably detailed and non-conclusory," *Pinson v. U.S. Dep't of Justice*, 245 F. Supp. 3d 225, 239 (D.D.C. 2017); *see also Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (requiring that, to support summary judgment, agency affidavits must "demonstrate that the information withheld logically falls within the claimed exemption, and . . . not [be] controverted by either contrary evidence in the record nor by evidence of agency bad faith" (quoting *Miller v. Casey*, 730 F.3d 773, 776 (D.C. Cir. 1984)). While reviewing courts should "respect the expertise of an agency," *Hayden v. NSA / Cent. Sec. Serv.*, 608 F.2d 1381, 1388 (D.C. Cir. 1979), courts review an agency's decision to withhold records *de novo* and will

8

only endorse that decision if the agency's justification for invoking a FOIA exemption "appears logical or plausible," *Pinson*, 245 F. Supp. 3d at 239 (quoting *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007)).

The updated justifications filed by USPS maintain that the withholding of extensive portions of the OIG Whitepaper is proper pursuant to FOIA Exemption 3, 5 U.S.C. § 552(b)(3)(A), and the Postal Reorganization Act, 39 U.S.C. § 410(c)(2).  Defs.' Update at 1. Under Exemption 3, an agency can withhold from disclosure matters that are "specifically exempted from disclosure by statute," provided that the statute either "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3)(A).  For this exemption, then, the agency must "show [1] that the statute claimed is one of exemption as contemplated by Exemption 3 and [2] that the withheld material falls within the statute."  *Larson*, 565 F.3d at 865 (citing *Fitzgibbon v. CIA*, 911 F.2d 755, 761–62 (D.C. Cir. 1990)).

The USPS OIG relies on the Postal Reorganization Act, which specifically exempts from disclosure under FOIA "information of a commercial nature, including trade secrets, whether or not obtained from a person outside the Postal Service, which under good business practice would not be publicly disclosed."  39 U.S.C. § 410(c)(2).  The Capitol Forum has not disputed that the Postal Reorganization Act is a withholding statute under Exemption 3.  *See* Pl.'s Mem. of Law in Supp. of Cross-Mot. for Summ. J. and in Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s MSJ") at 16, ECF No. 12-1.  As the Court explained in its previous opinion:

> the relevant provision of the Postal Reorganization Act, 39 U.S.C. § 410(c)(2) is relatively broad.  *See Airline Pilots Ass'n, Int'l v. U.S. Postal Serv.*, No. 03-cv-2384, 2004 WL 5050900 at *6 (June 24, 2004).  The Act was designed to make USPS function more like a modern, competitive business.  *See Am. Postal Workers*

*Union AFL-CI v. U.S. Postal Serv.*, 742 F. Supp. 2d 76, 82 (D.D.C. 2010) (citing *Franchise Tax Bd. V. U.S. Postal Serv.*, 467 U.S. 512, 519–20 (1984)).  In it, "Congress, specifically delineat[ed] the circumstances under which FOIA does not apply to USPS, [and] used the words 'good business practice.'"  *Airline Pilots Ass'n*, 2004 WL 5050900 at \*6 (citing 39 U.S.C. § 410(c)(2)).  This language designates a broad swath of documents as protected, as most modern businesses would not publicize sensitive trade information even if it was already public in some limited form.

*DBW Partners*, 2019 WL 5549623 at \*8.

### III.  ANALYSIS

The USPS OIG initially withheld the entirety of the OIG Whitepaper on the basis of Exemption 6.  Compl. ¶ 19.  It then produced a heavily redacted version after this litigation began.  *See* Nickoski Decl., Ex. H at 41–82, ECF No. 11-3.  After the Court held that USPS "ha[d] not met its burden of explaining its withholdings and segregability review with reasonable specificity," *DBW Partners*, 2019 WL 5549623 at \*10, USPS released another version of the Whitepaper, with somewhat more material disclosed and somewhat less redacted, *see* Owens Decl., Ex. 1, Whitepaper, ECF No. 19-1 at 25–66.[2]

USPS's updated justifications of its withholdings rest primarily on the Declaration of Sharon Owens, USPS Vice President for Pricing and Costing.  *See* Defs.' Update; Owens Decl.; *see also Pinson*, 245 F. Supp. 3d at 239 (noting that an agency may rely on declarations in support of summary judgment in FOIA litigation).  She previously worked as USPS Acting Vice President for sales, and "in this capacity [she] oversaw the direction and management of the Sales organization which included setting the strategic sales direction with regards to channel partners and was responsible for the negotiation of all customized pricing through Negotiated Service Agreements."  Owens Decl. ¶ 4.  NSAs, she explains, are "customized and mutually

---

[2] Unless otherwise noted, citations to the Whitepaper throughout the remainder of this opinion refer to this most recent version attached to the Owens Declaration.

beneficial contractual agreement[s] between the Postal Service and a specific mailer, which provide[] for customized terms and conditions to meet unique customer needs." *Id.* ¶ 7.  These terms and conditions may include "unique or customized pricing, transportation, packaging, payment, technology, transit time, and special services." *Id.*

After describing Owens's own background and the basis for her knowledge, the declaration turns to focus on the Whitepaper.  Borrowing extensively from the declaration filed by Dennis Nicoski in support of USPS's earlier motion, *see* Nicoski Decl., the new Owens declaration explains that the terms of NSAs are kept secret to maintain competitive advantages for USPS.  Owens Decl. ¶ 10.  Also echoing the Nicoski declaration, the Owens declaration explains that even just "[k]nowing how the Postal Service thinks about such contracts, discusses such contracts or otherwise acts surrounding such contracts could provide another company with a competitive advantage." *Id.* ¶ 11.  The declaration identifies risks that USPS would run if too much of its thinking were disclosed, including "giv[ing] competitors insight into the Postal Service's strategic decision-making . . . and an ability to tailor their business strategies accordingly." *Id.* ¶ 14.  "Such insight would be unprecedented in the marketplace" because "none of the Postal Service's competitors disclose their strategies around customer contracts." *Id.*  Revealing too much would mean "placing [the Postal Service] at a significant competitive disadvantage." *Id.* ¶ 17.

The declaration then turns to a section-by-section review of the contents of the Whitepaper and of the reasons why, according to USPS, much of the information contained therein is exempt from disclosure.  *See id.* at 7–23.  This section provides a high-level description of the contents of each subsection of the document.  It even provides this for subsections where, according to USPS, not even the heading of that subsection can be disclosed.

For instance, one subsection "discusses the Postal Service's overall place in the package market, historically, th[r]ough the present, and potentially into the future." *Id.* at 11. Another "lays out the Postal Service's strategies concerning NSAs, including how it categorizes and uses partners" and "covers numerous aspects of certain business programs, including challenges faced by the Postal Service within this market space and with regard to the behavior of certain competitors." *Id.* at 12. This portion of the document is highly repetitive, as the Capitol Forum notes. *See* Pl.'s Resp. at 2. Some subsection descriptions are repeated. The Court is told, for instance, that multiple subsections "provide[] an in-depth discussion of the channel partnership program, including the Postal Service's strategies and OIG's views concerning those strategies and how they might be changed regarding enforcement of the agreements." *Id.* at 14, 15, 16. USPS also represents, repeatedly, that "[a]ny facts, surrounding [particular] discussion[s] . . . are inextricably intertwined with business sensitive information and should [be] withheld." *E.g., id.*

In its Response, which the court construes as a renewed cross-motion for summary judgment, the Capitol Forum states that "[i]n view of the redacted nature of the Whitepaper, the new confidentiality claims, and the failure of the new declaration to provide any transparency, Capitol Forum is unable at this time to offer a concrete and specific response to the Postal Service's filings." Pl.'s Resp. at 3. Nonetheless, the Plaintiff advances a few arguments and makes a few suggestions for what relief the Court might provide. It notes that "[t]he revised version of the Whitepaper remains almost entirely redacted—and unreadable" and argues that "[t]he new Owens declaration fails woefully to comply with this Court's directive" because it does not "describe in any sufficient detail its review for segregable information; and it fails to explain that it had produced all information that would not risk disclosing non-exempt information." *Id.* at 2. With this in mind, as noted previously, the Capitol Forum "urge[s] the

Court to order the release of the Whitepaper in unredacted form, or, in the alternative to release those portions of the Whitepaper that do not contain confidential information." *Id.* at 3.

In the first round of cross-motions for summary judgment, the Capitol Forum argued that the Whitepaper as a whole was not exempt from disclosure and should have been disclosed. *See DBW Partners*, 2019 WL 5549623 at *7. For the same reason that the Court rejected that contention, it will reject the Capitol Forum's new invitation to order release of the full unredacted document. Whether or not the USPS fulfilled its duty to properly segregate all segregable material, there remains no question that it carried its burden under FOIA to justify withholding at least some of the OIG Whitepaper. Owens explains, as Nicoski also did, that the Whitepaper contains details about the Postal Service's perceptions, strategy, and goals concerning NSAs. *See* Owens Decl. ¶¶ 9–18. This high-level description of the nature and import of the document remains enough to make it "logical" or "plausible," *see Wolf*, 473 F.3d at 374–75, that it would not be "good business practice" to disclose at least some of the OIG Whitepaper, 39 U.S.C. § 410(c)(2). *See DBW Partners*, 2019 WL 5549623 at *7–8. If the Capitol Forum means to invite the Court to find that USPS has acted with the kind of bad faith that might make summary judgment for the government inappropriate, the Court sees no evidence of this and the Capitol Forum has not developed the necessary argument with any clarity. *See Bartko v. U.S. Dep't of Justice*, 102 F. Supp. 3d 342, 351–52 (D.D.C. 2015) (discussing the impact of agency bad faith in FOIA litigation).

The Capitol Forum's alternative suggestion—that the Court order the release of portions of the Whitepaper that the USPS identified as subject to Exemption 3—amounts to a challenge that USPS did not meet its burden on segregability under FOIA. Again, this renews an argument that the Capitol Forum made on its prior motion, so the law remains the same. *DBW Partners*,

2019 WL 5549623 at *8.  To meet its burden on segregability, a government agency must usually submit a sufficiently detailed *Vaughn* index for each document and an affidavit or declaration stating that it has released all segregable material.  5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."); *see Johnson*, 310 F.3d at 776 (citing *Armstrong v. Exec. Office of the President*, 97 F.3d 565, 578–79 (D.C. Cir. 1996)) ("The combination of the *Vaughn* index and the affidavits . . . are sufficient to fulfill the agency's obligation to show with 'reasonable specificity' why a document cannot be further segregated."). But an agency does not necessarily need to produce a *Vaughn* Index in every FOIA suit. Rather, an agency "may carry its burden of properly invoking an exemption by submitting sufficiently detailed affidavits or declarations, a *Vaughn* index of the withheld documents, or both." *Hardy v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 243 F. Supp. 3d 155, 162 (D.D.C. 2017) (citing *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013)).  Regardless of how an agency carries its burden, the bottom line is that, as a matter of law, "FOIA itself places the burden on the agency to sustain the lawfulness of specific withholdings in litigation." *Nat. Res. Def. Council v. Nuclear Regulatory Comm'n*, 216 F.3d 1180, 1190 (D.C. Cir. 2000) (citing *Vaughn v. Rosen*, 484 F.2d 820, 825–26, 828 (D.C. Cir. 1973)); *see also* 5 U.S.C. § 552(a)(4)(B).

The Capitol Forum is incorrect to say that "[t]he new Owens declaration fails woefully to comply with this Court's directive" to "discuss[] particular redactions in more detail."  Pl.'s Resp. at 3 (quoting *DBW Partners*, 2019 WL 5549623 at *10).  The earlier Nicoski and Martin declarations spoke about the Whitepaper and NSAs only in general terms.  *See* Nicoski Decl.; Martin Decl.  The Martin Declaration was accompanied by a *Vaughn* index which consisted of

only one entry for the entirety of the whitepaper and which cited FOIA Exemption 3 and the

Postal Reorganization Act as the basis for a partial withholding.  Martin Decl., Attach. 1 at 5,

ECF No. 11-4.  These earlier declarations only discussed the document as a whole, whereas the

Owens declaration reviews it in a much more granular fashion.  More than half of the Owens

declaration is devoted to a section-by-section review of the OIG Whitepaper and to explanations

of why USPS thinks withholding of each particular section is justified.  This section has no

equivalent in the declarations filed in support of the Defendants' prior motion, and it goes a long

way toward making extensive redaction of the OIG Whitepaper more "logical" than it seemed in

the Court's first review.  *See Wolf*, 473 F.3d at 375.  It provides precisely the kind of "relatively

detailed justification[s]" referencing "particular part[s] of the withheld document" that were

entirely missing from the Postal Service's earlier declarations, *Elec. Privacy Info. Ctr.*, 192 F.

Supp. 3d at 103 (internal quotation omitted), in particular when reviewed in conjunction with the

Court's *in camera* review of the Whitepaper itself.

Segregability is also discussed in more detail in the Owens declaration.  The Court's

previous ruling observed that the Nicoski Declaration had stated only "that 'the Postal Service

did unredact and produce *certain information* that in its review would not pose a risk of

disclosing' exempt information."  *DBW Partners*, 2019 WL 5549623 at *9 (quoting Nicoski

Decl. ¶ 24 (emphasis added)).  "This [did] not explain whether the Defendants ha[d] unredacted

and produced *all information* that would not risk disclosing exempt information, as required by

FOIA."  *Id.* (citing 5 U.S.C. 552(b)).  As a result, the declaration fell short of the standard for a

sufficient agency declaration, as demonstrated by cases like *Adoinser v. Department of Justice*,

811 F. Supp. 2d 284 (D.D.C. 2011), where an agency was held to have met its burden on

segregability when it produced a declaration stating that "[a]ll responsive pages were examined

[by the agency] to determine whether any reasonably segregable information could be released." *Id.* at 295 (internal citation omitted); *see DBW Partners*, 2019 WL 5549623 at *9.

The Capitol Forum rightly notes that the Owens declaration still lacks a statement as sweeping and conclusive as this. Pl.'s Resp. at 2 ("[The Postal Service] fails to explain that it had produced all information that would not risk disclosing non-exempt information."). Nonetheless, the Government has said much more about segregability this time around and in doing so it has met its burden. The Owens declaration introduces its lengthy section-by-section analysis by saying it is meant to "justify the withholding of non-segregable and exempt information." Owens Decl. ¶ 23. Then, for each subsection where the issue of segregability is relevant—and it is relevant for nearly all of them—the Owens declaration explains what kind of business sensitive information appears therein, and states that undisclosed facts were "inextricably intertwined with business sensitive information" of the sort protected by the Postal Reorganization Act and must therefore be withheld. *See id.* at 7–22. So, while there is no broad statement affirming the thoroughness of USPS's segregability review overall, USPS's section-by-section affirmations have the same cumulative function.

There is no strict level of detail that an agency must provide when explaining its segregability review, so long as the explanation provided is "sufficient to explain the reasons for [the agency's] withholding and segregation decisions." *See Khine v. Dep't of Homeland Sec.*, 943 F.3d 959, 967 (D.C. Cir. 2019). USPS has explained that it reviewed each portion of the document for segregable material and that it has produced what it could. *See Nat'l Ass'n of Crim. Def. Lawyers v. Dep't of Justice, Exec. Office for U.S. Attys.*, 844 F.3d 246, 257 (D.C. Cir. 2016) (suggesting that section-by-section review for segregability can be appropriate for lengthy

documents).  For the most part—with exceptions stemming from the Court's *in camera* review addressed below—this suffices to carry the agency's burden on segregability.

The Capitol Forum gives two more specific reasons why the Court should not find the Owens declaration sufficient with regard to segregability.  The first of these is the declaration's repetition—twenty-three times—of the same sentence: "[a]ny facts, surrounding [particular] discussion[s] . . . are inextricably intertwined with business sensitive information and should [be] withheld."  Pl.'s Resp. at 2 (quoting Owens Decl.).  In fact, the plaintiff notes, this sentence contains a repeated drafting error—the omission of the word "be"—each time it is repeated, suggesting that "little critical thought was expended" in drafting the declaration's justifications. *Id.*  The Court is not particularly concerned by this repetition, or by the fact that copy-and-paste was apparently used in drafting the declaration.  USPS has simply repeated language explaining the reason why certain information is not segregable.

The repeated language reflects the relevant legal standard in this Circuit.  *See Mead Data Ctr.*, 566 F.2d at 260 ("It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions.").  Because this standard governs the segregability analysis that USPS was obligated to perform for each subsection of the document, it stands to reason that USPS would have occasion to reference that standard repeatedly in explaining the substance of that analysis to the Court, and repetition of this sort is permissible for an agency justifying its FOIA withholdings.  *See, e.g.*, *Landmark Legal Found. v. IRS*, 267 F.3d 1132, 1138 (D.C. Cir. 2001) (finding no problem with an agency's justifications for withholdings that "essentially parrot[] the language of" an Exemption 3 withholding statute because "agencies are not graded on the richness or evocativeness of their vocabularies" and because "[i]t is not the agency's fault that thousands of documents belonged in

the same category"); *Lantz v. U.S. Dep't of Commerce*, 316 F. Supp. 3d. 523, 529 (D.D.C. 2018)

("While [plaintiff] is correct that [the Government's] justifications are generic and repetitious, it

does not follow that they are inadequate. The very purpose of a *Vaughn* index is to allow the

summarization of records without disclosing their content; some amount of boilerplate is to be

expected."). So long as an agency relies on "*commonalities*, not *generalities*," repetitive

justifications for withholdings may nonetheless be sufficiently detailed. *Judicial Watch, Inc. v.*

*FDA*, 449 F.3d 141, 147 (D.C. Cir. 2006) (emphasis in original) ("[C]ategorization and repetition

provide efficient vehicles by which a court can review withholdings that implicate the same

exemption for similar reasons."); *see also Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 349 (D.C.

Cir. 1987) (noting that while repetition could be unhelpful to a court, so could "a sort of phony

individualization" achieved by "meaningless variations of language at each invocation of a

specific exemption").

       If the declaration had extensively repeated language used to describe subsections of the

Whitepaper, it might have been a greater cause for concern, because the substance of the

subsections are obviously not identical. Here, though, the contents of the subsections are

described more or less individually,[3] and only the summary of the segregability analysis is

repeated. In that regard, the repeated reference to this legal standard is no less appropriate than

repeated references to FOIA Exemption 3 or to the Postal Reorganization Act would have been.

---

[3] As it stands, the declaration repeats certain high-level descriptions, such as "[t]his section provides an in-depth discussion of the channel partnership program . . . ," Owens Decl. at 14, 15, 16, 17, but none of these are repeated twenty-three times, and generally different descriptions are provided for different subsections. Moreover, it is understandable that successive subsections would bear some similarities to one another. This simply indicates that the document is well-organized and is no cause for suspicion.

The Capitol Forum's second critique of the Owens declaration is that it "move[s] the goalposts regarding the character of the 'confidential information'" because, it says, the Postal Service previously "rested on how the 'inextricably intertwined' information related to the NSAs," whereas it now claims "that a myriad of other types of information is now confidential . . . that bear little, if any, relevance to NSAs." Pl.'s Resp. at 2. The Capitol Forum says that new types of information that the agency is claiming are confidential include "the 'history of the Postal Service,'[4] and its 'history of business agreements,' and its 'overall place' in the package market, and its business challenges." *Id.* Although the Capitol Forum provides no caselaw supporting this critique, it is true that inconsistency in an agency's explanations or FOIA review procedure may be indicative of bad faith and may be a reason to deny summary judgment to the Government in a FOIA case. *See e.g.*, *Roseberry-Andrews v. Dep't of Homeland Sec.*, 299 F. Supp. 3d 9, 25 ("[T]hese inconsistencies [in search methodologies] provide another reason that the Court cannot conclude that Defendant's search . . . is sufficient to warrant summary judgment."); *Landmark Legal Found. v. EPA*, 959 F. Supp. 2d 175, 183 (D.D.C. 2013) ("The possibility that EPA engaged in such an apparently bad faith interpretation, . . . supported by EPA's inconsistent filings, precludes this Court from entering summary judgment in their favor . . . .").

There is no meaningful inconsistency here. USPS's justification for its withholdings, stated in broad terms, remains that the Postal Reorganization Act allows for the withholding of "information of a commercial nature . . . which under good business practice would not be

---

[4] The Capitol Forum selectively quotes the declaration here. It refers at several points to the "business history of the Postal Service" or "history of the Postal Service's business," *see* Owens Decl. at 8, 9, 10, but never asserts any confidentiality over the mere "history" of the organization without referencing business. Because the Postal Reorganization Act's FOIA exemption focuses on the Postal Service's operation as a business, the distinction is significant.

publicly disclosed," 39 U.S.C. § 410(c)(2), pursuant to FOIA Exemption 3, 5 U.S.C. § 552(b)(3).

USPS's justification for its withholdings is still that any remaining exempt information is

"inextricably intertwined" with non-exempt information relating to NSAs because the entire

Whitepaper concerns NSAs.  The discrete phrases that the Capitol Forum identifies do appear for

the first time in the Owens declaration, but that is because the Owens declaration is more

detailed than the agency's previous declarations.  This is both understandable and appropriate

because the Court's prior ruling criticized the Postal Service for filing declarations that were

insufficiently detailed.  *See DBW Partners*, 2019 WL 5549623 at *9 ("[T]he USPS OIG has

provided little to no evidence suggesting or explaining that whatever non-exempt information

remains below the current redactions is so 'inextricably intertwined with exempt portions' that

there are no further 'reasonably segregable portion[s]' that it is obligated to produce." (internal

quotations omitted)).

　　In addition, the new and more detailed descriptions are accurate.  Although the Court's *in

camera* review revealed some concerns—addressed below—regarding the Postal Service's

segregability determinations, it confirmed the accuracy of the repeated descriptors the Capitol

Forum highlighted as applied to their respective subsections of the Whitepaper.  The "Executive

Summary," "History of Partnerships and Discounts,"[5] and "Redacted Subsection Heading

Beginning Page 4" all touch on the business history of the Postal Service and involve NSAs.

*Compare* Owens Decl. 8–10, *with* Whitepaper at 1, 3–5; *see also supra* n.4.  That same

subsection beginning on page four also addresses "the Postal Service's history of business

agreements" with a few different entities, *see* Whitepaper at 4–5, and this does have "relevance

---

[5] This subsection is, in fact, wholly unredacted in the most recent version of the
Whitepaper provided to the Capitol Forum, *see* Whitepaper at 3–4, so it is not clear why USPS
addressed it in its updated justifications.  Nonetheless, the description is accurate.

to NSAs," *contra* Pl.'s Resp. at 2 (suggesting otherwise), because some of those agreements

discussed were NSAs.  The subsection headed "Ecommerce Boom, Technology Roil the Package

Market," also does, in fact, address "the Postal Service's overall place in the package market."

*Compare* Owens Decl. at 11, *with* Whitepaper at 5.  Again, this material is relevant to NSAs in

that NSAs with other companies affect the Service's place in the package market.  The new

descriptors that the Capitol Forum objects to are thus not only reasonable additions to USPS's

justifications but are also substantively accurate.

The Postal Service had two options in response to the Court's order: either to provide

more detailed explanations or to reveal more (or all) of the contents of the Whitepaper, if the

Postal Service thought it appropriate to do so.  The Capitol Forum may have hoped that the

agency would take the latter route, but, considering that the agency chose the former, it is hard to

see how it could have complied with the Court's order without making some novel statements

about the contents of the Whitepaper.  These added particulars do not amount to a change in the

agency's overall position suggestive of shifting rationales or bad faith.

In sum, the agency's new and considerably more extensive set of justifications is broadly

sufficient to meet its burdens under FOIA, including its burden to explain "that any reasonably

segregable non-exempt parts of records have been disclosed after redaction of exempt

information."  *Competitive Enter. Inst. v. EPA*, 232 F. Supp. 3d at 181.  Extensive redactions

remain in place, but, as the Court said in its prior opinion, "no genuine dispute is shown merely

because a released record was heavily redacted," *Plunkett v. Dep't of Justice*, 924 F. Supp. 2d

289, 304 (D.D.C. 2013), and if the agency "show[s] with reasonable specificity why material

could not be segregated," through affidavits, declarations, [or] a *Vaughn* index, the agency

"meets its burden under FOIA," *Billington v. U.S. Dep't of Justice*, 301 F. Supp. 2d 15, 23

(D.D.C. 2004) (citing *Armstrong*, 97 F.3d at 579).  In this case, between the first and second

round of summary judgment review, the USPS decreased its redactions somewhat and increased

the detail and specificity of its explanations considerably.

The Court has also conducted an *in camera* review of an unredacted version of the

Whitepaper.  The Court found the substance of the Owens declaration largely sufficient and

generally found the contents of the unredacted Whitepaper to be consistent with the descriptions

provided in the Owens declaration.  The Court is also cognizant that "the law of segregability

does not require . . . 'an agency to commit significant time and resources to the separation of

disjointed words, phrases, or even sentences,'" *Jordan v. U.S. Dep't of Labor*, 273 F. Supp. 3d

214, 236 (D.D.C. 2017) (quoting *Mead Data Ctr.*, 566 F.2d at 261 n.55).  Nonetheless, the Court

was able to identify several cleanly segregable portions for which the Owens declaration does

not adequately justify nondisclosure.  Even granting "the expertise of [the] agency" in certain

areas, *Hayden*, 608 F.2d at 1388, the declaration's justifications regarding these portions do not

"appear[]'logical' or 'plausible,'" *Pinson*, 245 F. Supp. 3d at 239 (quoting *Wolf*, 473 F.3d at

374–75), when read alongside the actual contents of the Whitepaper.

First, the second and third paragraphs of page 1, in the Executive Summary section—

with the exception of the first five words of the second paragraph—are not exempt from

disclosure because they contain only broad descriptions of the role of USPS channel partners.

The concept of "channel partners" is explained in an unredacted paragraph on page 6 of the

Whitepaper.  Redacting it on page 1 is thus internally inconsistent.  *See DBW Partners*, 2019 WL

5549623 at *10.  The specific examples of channel partners provided in the second paragraph on

page 1 are publicly disclosed programs, information about which can be readily found on the

USPS and USPS OIG websites.  While certain kinds of detailed discussions about these

programs could certainly be protected under the Postal Reorganization Act, the Executive

Summary section only mentions these in passing and gives broad descriptions of the programs.

Because this basic information is already public, it may not be withheld.  *See Wolf v. CIA*, 473

F.3d at 378 (explaining that "[a]n agency's official acknowledgment of information by prior

disclosure" means that "its disclosure may be compelled" so long as the requested information is

as specific as the prior disclosure (citing *Fitzgibbon*, 911 F.2d at 765)).  The third paragraph on

page 1 must also be disclosed for similar reasons.  It states that the relationships in this market

space are complex, but that fact could be gleaned from the disclosed portions of the Whitepaper.

It then makes a statement about Stamps.com's volume of shipping which, while apparently

somewhat out of date, can be found on Stamps.com's public website.  *See Shipping*,

Stamps.com, https://www.stamps.com/shipping/.  The Court is not certain whether this figure has

been officially disclosed by USPS, so it is not relying on the official acknowledgment doctrine

here.  Instead, the Court simply sees no plausible argument that this figure reveals anything

about USPS's business strategy.  These two paragraphs are easily segregable and must be

disclosed.[6]

The first paragraph on page two must also be disclosed because the information it

contains has already been officially acknowledged by USPS OIG.  This paragraph, the first

sentence of which is already unredacted, discusses OIG projects that, while underway when the

Whitepaper was drafted in 2018, have since been completed.  The USPS OIG public web site

---

[6] In the most recent redacted version of the Whitepaper, the Defendants also suggest that this material is protected by FOIA Exemption 5.  *See* Whitepaper 1; *see also id.* at Cover through p.4, pp. 6–7, 12, 17, 39 (referencing Exemption 5); *id.* at 39 (referencing Exemption 6).  Because the Defendants' declaration makes no mention of any FOIA exemption other than Exemption 3, it fails to carry the Government's burden of justifying the application of any other exemption.  Accordingly, the Court does not give any weight to the redacted Whitepaper's references to any exemption other than Exemption 3.

reveals at least as much information as the redacted material in this first paragraph on page 2. The paragraph is easily segregable and must be disclosed.

The second and third sentences of the first full paragraph on the right-hand side of page 3 are also not exempt. The second sentence of this paragraph conveys information that is also conveyed in an unredacted paragraph elsewhere in the Whitepaper. The third sentence of this paragraph likewise contains no information that could not be easily gleaned from a review of the unredacted portions. Redacting these sentences therefore yields internal inconsistencies. USPS has carried its burden regarding redaction of the other two sentences in this paragraph (the first and the final sentences), as they contain commercial information concerning USPS's thinking.

Figure 3 on page 8 must also be disclosed because of the official acknowledgment doctrine. The exact same data is publicly accessible on the USPS OIG website.[7]

Finally the following portions of pages 19 to 20 and 28 to 30 are not exempt and must be released: (a) the first paragraph on page 19 under the heading "Summary and Evaluation of Management's Comments"; (b) all paragraphs on page 19 to 20 under the heading "Authority and Independence of the Inspector General"; (c) the first paragraph on page 20 under the heading "Sufficiency of Evidence"; (d) all of pages 28 and 29; and (e) the partial paragraph at the top of page 30 and the first full paragraph following it. USPS justifies the claimed exemption of the material on pages 19 and 20 by saying that "[t]his section reveals the direct management thoughts of the Postal Service on the entire report," and that facts therein "are inextricably intertwined with business sensitive information." Owens Decl. at 22. On the Court's read,

---

[7] References to the same data appear in several discrete portions of the Whitepaper at issue in this case. The Court will not order segregation of these because "the law of segregability does not require a court to 'order an agency to commit significant time and  resources to the separation of disjointed words, phrases, or even sentences.'" *Jordan*, 573 F. Supp. 3d at 236 (quoting *Mead Data Ctr.*, 566 F.2d at 261 n.55).

however, the paragraphs the Court has identified as non-exempt are not "intertwined with business sensitive information," but contain management's thoughts on issues that are not "business sensitive" or related to the Postal Service's commercial role. The Postal Reorganization Act only exempts from FOIA "*information of a commercial nature . . . which under good business practice would not be publicly disclosed.*" 39 U.S.C. § 410(c)(2) (emphasis added). Because the information contained in these identified paragraphs is not "of a commercial nature," it is irrelevant whether it would be good business practice to disclose it. The Postal Service's obligations under FOIA, which favors disclosure, win out where "information of a commercial nature" is not directly implicated. Instead, these portions of the report reflect directly on "what the[] government is up to"—the core of what FOIA was designed to address. *Nat'l Archives & Records Admin v. Favish*, 541 U.S. 157, 171 (2004) (internal quotation omitted). The appended material on pages 28 through 30 relates to this same issue and is non-exempt for the same reasons.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Defs.' Update, ECF No. 19) is GRANTED IN PART AND DENIED IN PART and Plaintiff's Cross-Motion for Summary Judgment (Pl.'s Resp., ECF No. 20) is GRANTED IN PART AND DENIED IN PART. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  April 28, 2020

RUDOLPH CONTRERAS
United States District Judge